Gifford A. Cochran v. Commissioner.
Cochran v. Commissioner
Docket No. 45351.
United States Tax Court
T.C. Memo 1955-66; 1955 Tax Ct. Memo LEXIS 274; 14 T.C.M. (CCH) 206; T.C.M. (RIA) 55066; March 21, 1955
Irving Warshaw, Esq., 50 Church Street, New York, N. Y., and Marcus Franks, Esq., for the petitioner. S. Jarvin Levison, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency of $12,640.73 in petitioner's income tax for the year 1947. *275 A depreciation adjustment is not contested. The questions to be decided are (1) whether loans made by petitioner which became worthless in 1947 are deductible in full as business bad debts, or as business losses, or as losses on transactions entered into for profit, or whether they are deductible solely at capital gain rates; and (2) whether certain expenditures made by petitioner during the year in controversy in clearing a part of his farm property for pasture use are nondeductible capital expenditures under section 24(a)(2) of the Internal Revenue Code of 1939. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner, an individual, resided in New York City during the year in controversy and filed his income tax return for that year with the collector for the third district of New York. Petitioner maintained a business office from 1932 through 1947, and employed at least one staff member during the year in controversy. In 1932 and 1933, petitioner organized a corporation called Film Exchanges, Inc., which brought a German motion picture to this country. During that same period, he organized and financed a musical play entitled "Drei-Pfennig *276 Oper" or "The Three-Penny Opera." In 1933 and 1934 he financed, organized and helped to manage a corporation which produced the moving picture "Emperor Jones." During that period, he was associated with the Mercury Theater. Petitioner served in the Armed Forces during the years 1942 through 1945. In 1946, petitioner was introduced to J. J. Augustin, who had been a publisher in Europe. After that meeting, on or about April 1, 1946, petitioner and Augustin organized J. J. Augustin Publishers Corporation, hereinafter called the corporation, under the laws of the State of New York. Augustin served as its president, and petitioner was its vice president. Petitioner paid $25,000 for part of the corporation's capital stock. Augustin agreed to contribute various books and publications which had been impounded by the British Government, release of which had been promised to Augustin. Petitioner had written a book entitled "Grandeur in Tennessee," but had been unable to have it published. One of his motives in promoting the corporation was to have his book published. Petitioner entered into an agreement with the corporation for the publication of this book and subsequently received royalties *277 therefrom. During the period from August 6, 1946 to February 25, 1947 petitioner made 15 separate loans to the corporation in the total amount of $31,178.11. One of the advances, totaling $4,523.05, was secured by a pledge of the corporation's accounts receivable. Petitioner had previously sought to obtain a loan from his bank to the corporation, offering to pledge the corporate receivables therefor. The bank had suggested to petitioner that he make the loan and thereby reduce its cost, as he had the funds to do so. Two of the advances, totaling $800, were made directly to creditors of the corporation. Many creditors extended credit to the corporation on the basis of petitioner's personal assurance that their accounts would be paid. Petitioner did not expect the corporation to repay his loans unless its operations were profitable. In March 1947, the corporation's assets and the conduct of its business were turned over to a creditors' committee. At that time, there was due to petitioner from the corporation the sum of $28,610.02. That debit balance became worthless in the year 1947. In the year 1947, petitioner made a loan to Otto Reichow in the amount of $275. This debt became *278 worthless in that year. In the year 1947, petitioner made a loan to John Wyeth in the amount of $150. This debt became worthless in that year. Petitioner maintained separate books and records for each of his business activities. Petitioner purchased a farm in 1941 that had been used as a dairy farm prior to that time. He intended to breed pure-bred Aberdeen-Angus cattle on that farm. The contemplated operation of the farm was delayed from 1942 to 1945, pending his return from service in the Armed Forces. In 1947, petitioner managed this farm personally, and expended the sum of $3,813.97 for clearing a part of the farm for pasture purposes. If acreage of the type found on this farm is left without attention for a period of years, young elm and ash trees may grow up and reach substantial size in that time. Young trees and brush were well-rooted in the acreage cleared by petitioner in 1947, and heavy machinery was required to remove them. The types of vegetation cleared off petitioner's farm need usually be cleared no more than once if the land is properly and continuously maintained. During 1947, petitioner was a cotrustee of 4 separate trust funds. Petitioner is a beneficiary *279 of 2 of these trusts. The beneficiaries of the other 2 trusts are his brother and sister. Petitioner did not receive trustee fees for his duties as trustee in connection with these trust funds. Petitioner reported a gross income of $164,804.21 on his return for the year 1947. This included gross income from trusts as beneficiary in the amount of $134,968.82. Petitioner's loss from the worthlessness of his loans to the corporation was not incurred in carrying on a trade or business. Petitioner's losses from the worthlessness of loans to Reichow and Wyeth during the year in controversy were not incurred in the course of his trade or business. Opinion I. As our findings show, petitioner's only projects following his ventures in connection with two motion pictures, a play and the Mercury Theater during the years 1932 through 1934 are apparently the purchase of his farm in 1941 and the organization of a publishing corporation in 1946, at least partly to obtain publication of his own book. He participated actively in the management of the publishing corporation during the year in controversy and invested $25,000 in its capital stock. He also devoted a substantial amount of time *280 to the active management of his farm during that period. Petitioner maintained a separate business office to keep records for his various business interests. There is no question here of the validity of petitioner's loans to the corporation or payments on its behalf, nor of the worthlessness of these debts. But petitioner may deduct his losses as business bad debts only if they were incurred in the course of a business of promoting and financing operations which is sufficiently extensive and regular to constitute a trade or business apart from that conducted by the publishing corporation itself. Section 23(k) (1), (4), Internal Revenue Code of 1939. [1] Cf. Charles G. Berwind, 20 T.C. 808, affd. per curiam (C.A. 3) 211 Fed. (2d) 575; Hadwen C. Fuller, 21 T.C. 407, with Vincent C. Campbell, 11 T.C. 510; Henry E. Sage, 15 T.C. 299, acq. 1951-1 C.B. 3; Commissioner v. Stokes' Estate, (C.A. 3) 200 Fed. (2d) 637; Maloney v. Spencer, (C.A. 9) 172 Fed. (2d) 638. Petitioner has failed to sustain his factual [2] burden on this issued. This is not a case, like Larry E. Webb, 23 T.C. - (March 15, 1955), *281 where the intervening corporate form was absent. Having elected to conduct his publishing project in the corporate form, petitioner cannot appropriate to himself the loss sustained by the corporation as a business loss. Burnet v. Clark, 287 U.S. 410. See Higgins v. Smith, 308 U.S. 473. *282 Moreover, as petitioner testified and as our findings show, he did not expect to be repaid unless the corporation's operations proved to be profitable. Such an understanding is more consistent with a capital contribution than with a loan transaction. See Sam Schnitzer, 13 T.C. 43, 60, affd. per curiam (C.A. 9) 183 Fed. (2d) 70, certiorari denied 340 U.S. 911. Even though we accept petitioner's third alternative that this was a loss sustained in a transaction entered into for profit, we think it adequately demonstrated that the loss was of a capital asset and was accordingly a capital loss under section 23(g)(3). This deduction for a capital loss is allowed in the deficiency notice. In these circumstances, petitioner's alternative arguments must fail under both sections 23(k)(1) and 23(e). As to the losses in connection with the publishing corporation, respondent's treatment is sustained. Nor is there anything in the record which would justify a rejection of respondent's similar treatment of loans to the individuals, Reichow and Wyeth. Petitioner has failed to sustain his burden of proving that these were any more than mere personal advances *283 of the kind to which section 23(k)(4) was specifically directed. As to these amounts, respondent's determination is also sustained. II. The cost of clearing part of the pasture land on petitioner's farm and removing of the trees and brush with which it had become overrun is not deductible as an ordinary and necessary expense. The clearing of brush was not a normal incident of current operations. According to petitioner's own testimony, he cleared the area in preparation for its use by him as grazing land after he undertook the active management of the property and such an expenditure need not be repeated if the land is kept in continuous use. Petitioner does not deny the permanent effect of the expenditure, but argues that it did not increase the value of his property within the meaning of section 24(a)(2). [3] He contends that the clearing of the trees and brush merely restored the land to its original function; and that, in any event, developmental costs of this kind may be deducted or capitalized within the taxpayer's option. *284 Respondent's regulations [4] have been interpreted to permit the capitalization of currently deductible expenses, but to preclude the current deduction of capital items, among which are enumerated "such preparatory expenditures as the cost of clearing brush, trees, and stumps." Mim. 6030, 1946-2 C.B. 45; Mim. 6030 (Supp. 1), 1948-1 C.B. 42. This interpretation has been considered with approval. See Thompson & Folger Co., 17 T.C. 722, 728. Applying these authorities to the facts before us, we must conclude that, regardless of whether petitioner's preparatory expenditures increased the value of his pasture land, he has failed to qualify his 1947 expenditures as ordinary and necessary expenses incurred in carrying on his business within the meaning of section 23(a) and the applicable regulations. As to this issue, respondent's determination is also sustained. *285 capital. * * * $2 Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) BAD DEBTS. - (1) GENERAL RULE. - Debts which become worthless within the taxable year; * * * This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. * * *
(4) NON-BUSINESS DEBTS. - In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt * * * other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. ↩
2. Regs. 111, sec. 29.23(k)-6.↩
3. SEC. 24. ITEMS NOT DEDUCTIBLE. (a) GENERAL RULE. - In computing net income no deduction shall in any case be allowed in respect of - * * *
(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate; * * *↩
4. Regulations 111: Sec. 29.23(a)-11. EXPENSES OF FARMERS. A/ farmer who operates a farm for profit is entitled to deduct from gross income as necessary expenses all amounts actually expended in the carrying on of the business of farming. * * * The cost of farm machinery, equipment, and farm buildings represents a capital investment and is not an allowable deduction as an item of expense. Amounts expended in the development of farms, orchards, and ranches prior to the time when the productive state is reached may be regarded as investments of capital. * * * ↩