THOMPSON AND FOLGER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24187.  Promulgated October 30, 1951.

*Frank C. Scott, C. P. A.*, for the petitioner.
*Charles N. Nyquist, Esq.*, for the respondent.

### OPINION.

TURNER, *Judge:* The respondent determined deficiencies in income and excess profits taxes against petitioner as follows:

| Year | Income tax | Excess profits tax |
|---|---|---|
| 1944 | $4, 105. 53 | |
| 1945 | | $6, 678. 11 |
| 1946 | 9, 313. 57 | |

The question presented is whether the petitioner's expenditures incurred in the leveling and grading of certain hummocky land and swale, the drilling and equipping of a well and the installation of pipes and other structures for the distribution of water over the land so as to convert the land to a state susceptible for cultivation are deductible as business expenses.

The facts have been stipulated, and are found as stipulated.

The petitioner is a corporation organized under the laws of California and at all times material hereto was engaged in the business of farming, with its principal office at Stockton, California.

At all times material herein, the petitioner kept its books of account and compiled its income and excess profits tax returns on the cash receipts and disbursements basis of accounting. It filed its returns for the years involved with the collector for the first district of California.

The principal products of the petitioner's operation during the period involved were grapes, beef cattle, and sundry forage crops which were consumed by the cattle in the form of hay or by grazing.

The petitioner, through its officers and directors, began a project in the Spring of 1946 for the improvement and development for irrigation of certain undeveloped hummocky and swale pasture land. In the carrying out of this project, they engaged the services of L. B.

Raab, a civil engineer, to make surveys and draw maps and plans, entered into a contract with one J. E. Alldren to level and grade the land according to the plans, and engaged other persons to drill and equip a well to provide water for irrigating the improved land and to install concrete pipe and other irrigation structures to carry and distribute the water.

The petitioner's total expenditures during 1946 on the project amounted to $46,987.51, and that sum was deducted by petitioner in its income tax return for that year as an expense. The respondent, in the statement attached to the notice of deficiency, disallowed all but $169.29 of the expense item on the ground that the expenditures were, as to $45,294.62, "a capital expenditure, the cost of which is an additional cost of the land," and as to $1,692.89, "capital expenditures, the cost of which may be recovered through the allowance of depreciation over the life of the items." The difference of $169.29 not disallowed represents an allowance of depreciation on the items totaling $1,692.89, at 10 per cent for the period in 1946 they were used in the farming operations of the petitioner.

After the deduction of expenses of operation, depreciation, and other deductions, inclusive of the $46,987.51, expended on the farm development project, totaling $61,607.35, the petitioner's books of account showed a net loss for the year 1946 of $14,894.51, which amount was shown in detail in its return for that year.

The amounts of the petitioner's equity invested capital at the beginning of each tax year were as follows:

| Beginning of year | Invested capital | Surplus | Total equity invested capital |
|---|---|---|---|
| 1944 | $144,000 | $19,788.62 | $163,788.62 |
| 1945 | 144,000 | 25,592.94 | 169,592.94 |
| 1946 | 144,000 | 35,070.74 | 179,070.74 |

The amount of the petitioner's unused excess profits credit carryback, if any, from the taxable year 1946 depends upon this Court's determination of petitioner's income tax net income or its net operating loss, as the case may be, for the taxable year 1946. The amount of such unused excess profits credit carry-back, if any, from the tax year 1946 may be computed from the following factors, in addition to the amount of the petitioner's income tax net income or its net operating loss for 1946, as may be herein determined:

(1) Federal income tax paid during the year 1946 in the amount of $8,177.07.

(2) A cash dividend of $12,000 paid on January 8, 1946.

(3) A cash dividend of $24,000 paid on December 27, 1946.

On December 5, 1947, the petitioner executed a certain agreement per Form 872, entitled "Consent Fixing Period of Limitation upon Assessment of Income and Profits Tax," by which petitioner and respondent agreed "that the amount of any income, excess-profits or war-profits taxes due under any return (or returns) made by or on behalf of the [petitioner] for the taxable year ended December 31, 1944 under existing acts, or under prior Revenue Acts may be assessed at any time on or before June 30, 1949," and the agreement was executed on behalf of respondent on December 8, 1947, which dates of execution were less than 3 years after March 15, 1947, and which agreement was made pursuant to section 276 (b) of the Internal Revenue Code.

The parties are agreed that the petitioner is entitled in the recomputation of its adjusted net income, its normal tax net income, and its surtax net income for its tax year 1944, to a deduction of $546.89 paid by it for declared value excess-profits tax in that year, which deduction the respondent failed to allow in his determination of the petitioner's income tax liability for the year 1944.

The sole question before us is whether the respondent erred in disallowing as deductions from gross income amounts expended by the petitioner in 1946 to convert hummocky land and swale, presumably used by petitioner as pasture, into such state that it would be susceptible of cultivation. The work done consisted of leveling and grading the land according to surveys, maps, and plans made by a civil engineer employed for that purpose, drilling and equipping a well to provide water for irrigation, and installing concrete pipe and other irrigation structures to carry and distribute the water over the land. The petitioner deducted the amounts in question as ordinary and necessary business expenses in connection with its farming operations and the deductions so claimed were disallowed by the respondent, on the theory that the expenditures were capital in character and not, therefore, items of deduction.

The petitioner not only does not deny that the expenditures herein were capital in character, but to the contrary, on its brief, admits that they were capital expenditures according to the "standards of conventional commercial accounting practice." See also in that connection, *J. H. Sanford*, 2 B. T. A. 181. Regardless, however, of the admitted character of the expenditures and the statutory prohibition in section 24 (a) (2) of the Internal Revenue Code [1] against the deduction of amounts "paid out for new buildings or for permanent

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

    *        *        *        *        *        *        *

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate ;

improvements made to increase the value of any property or estate," it is the petitioner's contention that under section 29.23 (a)–11 of the respondent's regulations,[2] it may, if it so elects, deduct the said expenditures for the year in which they were expended. The provision of the regulation relied upon reads, "Amounts expended in the development of farms, orchards, and ranches prior to the time when the productive state is reached may be regarded as investments of capital." This provision, counsel contends, gives a farmer the right at his option, to capitalize or expense in the year paid or incurred any or all amounts expended in the development of a farm prior to the time when the productive state is reached, regardless of whether the expenditure was in character a capital item or an operating expense.

The sentence in question does not in our opinion lend itself to such construction. The permissive character of the expression indicates an intention to permit or allow something to be done which in the normal course would not be permitted or allowed. The provision contains nothing which would supply any basis for treating a capital expenditure as if it were an operating expense or as anything other than what it actually was, namely, an outlay of capital. The reasonable interpretation, and the one which in our view meets the test of simple logic, is that the provision was designed to allow a farmer to capitalize, rather than expense and deduct, expenditures made in the years prior to the bringing of the farm to a productive state, which expenditures

---

[2] REGULATIONS 111.

SEC. 29.23 (a)–11. EXPENSES OF FARMERS.—A farmer who operates a farm for profit is entitled to deduct from gross income as necessary expenses all amounts actually expended in the carrying on of the business of farming. The cost of ordinary tools of short life or small cost, such as hand tools, including shovels, rakes, etc., may be deducted. The cost of feeding and raising live stock may be treated as an expense deduction, in so far as such cost represents actual outlay, but not including the value of farm produce grown upon the farm or the labor of the taxpayer. Where a farmer is engaged in producing crops which take more than a year from the time of planting to the process of gathering and disposal, expenses deducted may, with the consent of the Commissioner (see section 29.41–2), be determined upon the crop basis, and such deductions must be taken in the year in which the gross income from the crop has been realized. The cost of farm machinery, equipment, and farm buildings represents a capital investment and is not an allowable deduction as an item of expense. Amounts expended in the development of farms, orchards, and ranches prior to the time when the productive state is reached may be regarded as investments of capital. Amounts expended in purchasing work, breeding, or dairy animals are regarded as investments of capital, and may be depreciated unless such animals are included in an inventory in accordance with section 29.22 (a)–7. The purchase price of an automobile, even when wholly used in carrying on farming operations, is not deductible, but is regarded as an investment of capital. The cost of gasoline, repairs, and upkeep of an automobile if used wholly in the business of farming is deductible as an expense; if used partly for business purposes and partly for the pleasure or convenience of the taxpayer or his family, such cost may be apportioned according to the extent of the use for purposes of business and pleasure or convenience, and only the proportion of such cost justly attributable to business purposes is deductible as a necessary expense. If a farm is operated for recreation or pleasure and not on a commercial basis, and if the expenses incurred in connection with the farm are in excess of the receipts therefrom, the entire receipts from the sale of products may be ignored in rendering a return of income, and the expenses incurred, being regarded as personal expenses, will not constitute allowable deductions. (See also sections 29.22 (a)–7, 29.23 (e)–5, and 29.23 (1)–10.)

were of such character that in the course of regular farming operations they would be regarded as operating expenses and therefore currently deductible. The interpretation contended for would make the provision pure surplusage, since, as a general rule, expenditures of a capital nature not only "may" but must "be regarded as investments of capital," and accordingly may not be currently deducted. To construe the regulation as providing the converse, that is, that the farmer was privileged at his option to expense and deduct capital items, would require us to re-write and expand the regulation. That we may not do.

The above provision first appeared in Regulations 45, promulgated under the Revenue Act of 1918, and it is the argument of petitioner's counsel that the respondent, from the beginning, was committed to the construction contended for, with the result that the regulation so construed acquired the force and effect of law and that the respondent may not now, retroactively, construe and apply it differently. To support the claim of established and settled construction, counsel relies on I. T. 1610, II–1 C. B. 85, issued in 1923, and I. T. 1952, III–1 C. B. 139, issued in 1924, both of which are quoted in the margin.[3]

The rulings now complained of, and which counsel contends in effect represent changes in a regulation long outstanding, were published as Mim. 6030, 1946–2 C. B. 45, under date of June 20, 1946, and Mim. 6030 (Supplement 1), 1948–1 C. B. 42, under date of January 8, 1948. The occasion for the issuance of Mim. 6030 is stated in the opening paragraph, as follows:

It has come to the attention of the Bureau that many taxpayers, accountants, and attorneys have construed this provision of the regulations as permitting the taxpayer to capitalize or to charge to expense, at his option, amounts expended in the development of farms, orchards, and ranches prior to the time the productive state is reached, regardless of whether the items represent investments of capital or expenses.

After pointing to I. T. 1610, *supra*, as the basis for the claimed construction of the regulation and to the provisions of section 24 (a) (2) of the Code as barring the deductions of expenditures for permanent improvements or betterments made to increase the value of any property or estate, the mimeograph then declares that the regulation does give the taxpayer the option to capitalize "expenditures incurred during the period of development which might otherwise be deductible

---

[3] I. T. 1610. Under article 110, Regulations 62, taxpayer has option of charging amounts expended in development of orchards prior to time productive state is reached as expense or capitalizing them.

I. T. 1952. A taxpayer who exercised his option for the years 1918, 1919 and 1920 in accordance with article 110, Regulations 45, by capitalizing the expenditures of bringing his ranch property to a productive state instead of deducting the amounts as business expenses is not entitled to file claims for refund based on the fact that he now desires to treat the amounts as business expenses for those years.

as current expenses, but it does not permit capital items to be treated as ordinary and necessary business expenses." Examples of expenditures, comparable to those here involved, and "which are required to be capitalized," are referred to as preparatory expenditures. Expenditures which under the regulation may be capitalized or deducted are described as "Expenditures incurred during the development period which represent ordinary and necessary expense items as an incident of current operations, such as the upkeep of a grove or orchard, taxes, water for irrigation purposes, and cultivating and spraying of trees." The mimeograph concludes with a declaration of policy, to the effect that where "with respect to taxable years beginning prior to July 1, 1946, taxpayers have, in their returns, treated the above-mentioned preparatory expenditures as ordinary and necessary expenses, such treatment will not be disturbed, and the rule stated in this mimeograph with respect to preparatory expenditures will be applied only with respect to such costs incurred for taxable years beginning on or after July 1, 1946."

Mim. 6030 (Supplement 1), *supra,* was issued under date of January 8, 1948, because some confusion apparently existed as to the declaration of administrative policy appearing in the last paragraph of the mimeograph as originally issued. In the supplement, the policy of the Bureau, in so far as we are here concerned, was clarified to show that (1) in the case of a taxpayer who in a taxable year beginning prior to July 1, 1946, was, for the first time, engaged in the development of a farm, orchard or ranch, the deduction of capital items of the character involved herein would be permitted for such year; and (2) a taxpayer previously engaged in operations of the character contemplated would be permitted to deduct such costs expended in a new project in a taxable year beginning prior to July 1, 1946, "provided it had been the taxpayer's practice, in his returns filed for preceding taxable years, to treat such preparatory expenditures with respect to old or continuing projects as ordinary and necessary expenses." [4] Finally, the supplement specified that for all taxable years beginning on or after July 1, 1946, expenditures of a capital nature, "whether or not applicable to so-called 'old' or 'new' projects and regardless of whether preparatory expenditures in taxable years beginning prior to July 1, 1946 have been capitalized or expensed," must be capitalized.

Our problem here is limited to the construction and application of the regulation. As noted above, the petitioner's counsel relies on what he claims was the established and accepted interpretation of the

---

[4] Petitioner's counsel at the time of trial disavowed any claim that it had been petitioner's practice in returns for prior years to treat such expenditures as ordinary and necessary expenses.

regulation for many years, which position he feels is supported by I. T.'s 1610 and 1952, *supra*. He takes rather violent issue with the interpretation of the regulation appearing in Mim. 6030 and Supplement 1 thereto, *supra*, as being contrary to the regulation and as having no retroactive force and effect. His position, in our opinion, is not well taken and must be rejected. The interpretation of the regulation, as set forth in conconsiderable detail in Mim. 6030 and Supplement 1 thereto, is in complete harmony with our interpretation previously stated herein. As for the prior interpretation claimed, I. T. 1610 goes no further than to say that expenditures which, under the regulation, "may be regarded as investments of capital" may, at the option of the taxpayer, be deducted or capitalized, and I. T. 1952 merely states that where the taxpayer has capitalized expenditures which, under the regulation in question, "may be regarded as investments of capital," he may not thereafter change his mind and obtain a refund of the income tax paid by changing his position and claiming the expenditures as business expense deductions. As is true of the regulation itself, neither of the I. T.'s may in our opinion be read as saying that expenditures, capital in character, as are those in this case, "may be regarded as ordinary and necessary expenses." Furthermore, the proposition that I. T.'s, Mimeographs, and other office rulings do not have the stature of a regulation is too well established to require discussion. And even if the I. T.'s in question were as petitioner contends, they would, as a matter of course, have to give way to a proper interpretation and application of the law, whether in the form of the statute itself or the duly promulgated regulation. And that would be so regardless of whether the overruling of the I. T.'s was prospective or retroactive in effect.

*Decision will be entered under Rule 50.*