T.C. Memo. 1996-348

UNITED STATES TAX COURT

JOHN AND LOUISA A. HODEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7435-94.                    Filed July 31, 1996.

John Hodel, pro se.

<u>Michael D. Zima</u> and <u>Stephen R. Takeuchi</u>, for respondent.

MEMORANDUM OPINION

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant

to section 7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent

---

[1]     Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

determined deficiencies in petitioners' Federal income taxes for 1986 and 1987 in the respective amounts of $3,475 and $4,258.

The parties have reached agreement concerning most of the adjustments involved in respondent's determinations, and the issues remaining for decision are:  (1) Whether petitioners are entitled to capitalize certain expenses attributable to their farming business and claimed as current deductions on Schedules F of their 1986 through 1990 Federal income tax returns; and (2) whether petitioners are entitled to a refund of an overpayment in 1986 attributable to the carryback of a net operating loss (NOL) incurred in 1989.  For ease of discussion, we address each issue separately.

Some of the facts have been stipulated and are so found. The stipulation of facts, stipulation of settled issues, and exhibits received into evidence are incorporated herein by this reference.  Petitioners resided in Apopka, Florida, at the time their petition was filed.  References to petitioner are to John Hodel.

Farming Expenses

On November 14, 1985, petitioners purchased 100 percent of the stock of Federal Citrus Corp. (FCC), a corporation engaged in the citrus grove business.  The assets of FCC include 46 acres of land, irrigation systems, fixtures attached to the land, and fencing.  During 1985, petitioners cleared the land and replaced the citrus grove with ornamental ligustrum seedlings.  They

formed a proprietorship (the nursery) to rent the land from FCC and grow ligustrum trees for resale.

Petitioners expected the trees to mature and be ready for resale in approximately 3 years. Instead, the trees were afflicted with continuous problems including freezes, disease, and inadequate care. Petitioner testified that he was not properly equipped to care for his nursery and, as a result, has not been able to prepare the trees for resale. Despite the substantial time petitioners devoted to the nursery, at the time of trial they had not sold one tree.

On their 1986 joint Federal income tax return, petitioners depreciated a truck, a farm tractor, a trailer and cart, security equipment, and two cars. The remainder of expenses attributable to the nursery was currently deducted on petitioners' Schedule F. These expenses included chemicals, rent paid for the FCC's land, seeds and plants, supplies, taxes, utilities, gasoline, repairs and maintenance, insurance, fertilizers, and labor. Petitioners continued to deduct similar expenses on their 1987 through 1990 returns. Petitioners have not received the approval of the Internal Revenue Service (IRS) to amend their treatment of the expenses deducted.

Farmers, like taxpayers in any other type of business, may deduct their ordinary and necessary business expenses under section 162. The farming business includes the operation of a nursery and the raising of ornamental trees such as petitioners'

ligustrum tree business.  Sec. 1.263A-4T(c)(4)(i)(A), Temporary Income Tax Regs., 59 Fed. Reg. 39960 (Aug. 5, 1994).  Expenses incurred in the farming business may be placed into three categories:  (1) The preparatory period; (2) the development or preproductive period; and (3) the productive period.  Expenses incurred during the preparatory period include drilling, clearing brush, laying pipes, and installing ditches and drainage pipes.  Such expenses are generally required to be capitalized.  Maple v. Commissioner, T.C. Memo. 1968-194, affd. 440 F.2d 1055 (9th Cir. 1971).  In contrast, ordinary and necessary expenses incurred during the productive period, after the farm produces or is reasonably expected to produce its first yield, are generally required to be deducted.  Id.  Farm expenditures that are clearly capital in nature are not deductible at any time.  Thompson & Floger Co. v. Commissioner, 17 T.C. 722, 724-726 (1951).

During the development or preproductive period, farmers are given the option under section 1.162-12(a), Income Tax Regs., to either deduct or capitalize ordinary and necessary expenses. This section provides in part:

> If a farmer does not compute income upon the crop method, the cost of seeds and young plants which are purchased for further development and cultivation prior to sale in later years may be deducted as an expense for the year of purchase, provided the farmer follows a consistent practice of deducting such costs as an expense from year to year. * * *  Amounts expended in the development of farms, orchards and ranches prior to the time when the productive state is reached may, at the election of taxpayer, be regarded as investments of capital. * * *

See also Estate of Wilbur v. Commissioner, 43 T.C. 322, 327 (1964); Vinson v. Commissioner, T.C. Memo. 1979-175, affd. per curiam 621 F.2d 173 (5th Cir. 1980). This regulation gives farmers the option of deducting or capitalizing expenditures incurred in the preproductive period which bear characteristics of both capital outlays and ordinary expenses, and, as such, fall within a "band of gray". Estate of Wilbur v. Commissioner, supra at 328. Preproductive (or cultural) expenditures include "irrigation, cultivation, pruning, fertilizing, spraying, and other care expenses". Maple v. Commissioner, supra.

In the present case, petitioners incurred most of their preparatory expenses during 1985, when they purchased and cleared the land, bought the seedlings, and planted the nursery. Of the expenses claimed on their 1986 return, all but $42 spent for young plants or seeds constitute preproductive expenses since they were incurred in the maintenance of the ligustrum trees. As such, petitioners had the option to either capitalize or deduct these expenses under section 1.162-12(a), Income Tax Regs.

However, for taxable years commencing after December 31, 1986, the Uniform Capitalization Rules (UCR) of section 263A generally apply to property produced by a taxpayer or acquired for resale that has a preproductive period of more than 2 years. Under this section, direct and indirect costs allocable to such property are required to be capitalized. The ligustrum seedlings purchased by petitioners qualify as property acquired for resale

pursuant to section 263A(b)(2)(A) and section 1.263A-3(a)(1), Income Tax Regs. Section 1.263A-4T(c)(4)(ii)(B), Temporary Income Tax Regs., supra, describes the preproductive period as follows: "The preproductive period of a plant begins when the plant or seed is first planted or acquired by the taxpayer. The preproductive period ends when the plant becomes productive in marketable quantities or when the plant is reasonably expected to be sold or otherwise disposed of." Petitioners planted the seedlings in 1986 and reasonably expected to sell them after 3 years. Because the productive period of the trees was more than 2 years, preproductive expenses attributable thereto are subject to the UCR, and, accordingly, petitioners are required to capitalize such expenses unless an exception applies.

Under section 263A(d)(3), a farmer may elect out of the UCR, and, instead, deduct his expenses in accordance with the provisions of section 162, with the requirement that the property produced is then treated as section 1245 property, and any gain resulting from the disposition thereof is recaptured to the extent of the deductions which, but for the election under section 263A(d)(3), would have been capitalized. The election must be made for the first taxable year beginning after December 31, 1986, during which the taxpayer engages in the farming business. Sec. 1.263A-4T(c)(6)(iii), Temporary Income Tax Regs., supra. "A taxpayer * * * shall be treated as having made the election if such taxpayer does not capitalize the costs of

producing property in a farming business as the provisions of this section would otherwise require."  Sec. 1.263A-4T(c)(6)(iv), Temporary Income Tax Regs., supra.  "Once an election is made, it is revocable only with the consent of the Commissioner."  Sec. 1.263A-4T(c)(6)(v), Temporary Income Tax Regs., supra.

In the instant case, petitioners are deemed to have elected out of the UCR when they deducted all the preproductive expenses attributable to the nursery on the Schedules F attached to their 1987 through 1990 tax returns.  Petitioners have not filed any requests to revoke this election.  Accordingly, we look to section 162 and the regulations thereunder to determine whether petitioners may amend their 1986 through 1990 returns in order to deduct some of the nursery expenses, capitalize others, and alter the mix of deductible and capitalized expenses from year to year.

In Estate of Wilbur v. Commissioner, supra, we addressed the issue of the revocation of an election to deduct farming expenses incurred during the preproductive period under section 1.162-12(a), Income Tax Regs.  The taxpayer in that case originally thought he had no taxable income for years 1958 and 1960 and, consequently, opted to capitalize preproductive expenses in order to recover them in subsequent years through depreciation.  When he learned during the course of an audit that he had taxable income for those years, he sought to offset this income by deducting the expenses that he had originally capitalized in the year in which the expenses were incurred.  We held that the

election to capitalize preproductive expenses was not revocable without the consent of the Commissioner, and therefore the taxpayer was bound by his original treatment of the expenses. Id. at 331.

Although petitioners recognize the authority of our decision in Estate of Wilbur v. Commissioner, supra, and agree that section 1.162-12(a), Income Tax Regs., does not permit taxpayers to deduct expenses that were originally capitalized, they contend that there is no prohibition against capitalizing expenses originally deducted. Petitioners also raise the issue of whether their deduction of farming expenses was an "irrevocable election" as opposed to a simple "option" which they have chosen and now are free to change at will. Petitioners deducted preproductive expenses attributable to the nursery on their original returns and now wish to capitalize a portion of those expenses. Based on the record, we find that petitioners' request flies squarely in the face of the doctrine of election.

The doctrine of election, as it applies to Federal tax law, consists of the following two elements: (1) There must be a free choice between two or more alternatives; and (2) there must be an overt act by the taxpayer communicating the choice to the Commissioner; i.e., a manifestation of choice. Grynberg v. Commissioner, 83 T.C. 255, 261 (1984); Bayley v. Commissioner, 35 T.C. 288, 298 (1960). Under the doctrine of election, a taxpayer who makes a conscious election may not, without the consent of

the Commissioner, revoke or amend it merely because events do not unfold as planned.  See, e.g., <u>J.E. Riley Inv. Co. v. Commissioner</u>, 311 U.S. 55 (1940); <u>Pacific Natl. Co. v. Welch</u>, 304 U.S. 191 (1938).  Subject to a few narrow exceptions, "once the taxpayer makes an elective choice, he is stuck with it."  <u>Roy H. Park Broadcasting, Inc. v. Commissioner</u>, 78 T.C. 1093, 1134 (1982).

In <u>Pacific Natl. Co.</u>, "often regarded as the fundamental authority for the development" of the doctrine of election, <u>Estate of Stamos v. Commissioner</u>, 55 T.C. 468, 473 (1970), the taxpayer had the option to treat certain income under the deferred payment or installment method.  It reported the income using one method and later sought a refund based on a computation under the other method.  The Supreme Court refused to allow this, holding:

> Change from one method to the other * * * would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws.  * * *  There is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which a return is to be made, to have his tax liability computed and settled according to the other method.  * * *

<u>Pacific Natl. Co. v. Welch</u>, <u>supra</u> at 194; see also <u>Grynberg v. Commissioner</u>, <u>supra</u> at 261 (quoting <u>Estate of Stamos v. Commissioner</u>, 55 T.C. 468, 473 (1970)); <u>Estate of Wilbur v. Commissioner</u>, 43 T.C. at 473, and cases cited therein.

In applying the doctrine of election to the instant case, we find that both requirements are met.  First, petitioners had a choice to either deduct or capitalize the preproductive expenses attributable to the nursery.  Second, petitioners claimed the expenses as current deductions on their 1986 through 1990 returns, and, in so doing, committed an overt act that manifested their choice to the IRS.

Petitioners argue that they made the decision to deduct the preproductive expenses based on gross income figures as reflected on their original returns, prior to the adjustments that were made to their income by respondent during the audit.  In other words, petitioners argue that their election was based on a mistake of fact, and, had they been aware of respondent's adjustments at the time of filing their returns, they would have elected to treat certain expenditures differently.

"Courts have recognized that a material mistake of fact may vitiate the binding nature of an election."  Grynberg v. Commissioner, supra at 261 (citing Roy H. Parks Broadcasting, Inc. v. Commissioner, supra at 1134).  Situations in which a material mistake of fact may allow a taxpayer to revoke an election are:  (1) The amended return was filed prior to the date prescribed for filing a return; (2) the treatment of the contested items in the amended return was not inconsistent with his treatment of that item in his original return; or (3) the treatment of the item on the original return was improper and the

taxpayer elected one of several allowable alternatives in the amended return.  Goldstone v. Commissioner, 65 T.C. 113, 116 (1975).  However, mere

> Oversight, poor judgment, ignorance of the law, misunderstanding of the law, unawareness of the tax consequences of making an election, miscalculation, and unexpected subsequent events have all been held insufficient to mitigate the binding effect of elections made under a variety of provisions of the Code.

Estate of Stamos v. Commissioner, supra at 474 (citations omitted).

We find that petitioners' desire to amend their returns is based on the type of justifications enumerated in Estate of Stamos.  Thus, pursuant to the doctrine of election, petitioners may not change their election to deduct preproductive expenses without the approval of the Commissioner.  Petitioners have not received the approval of the Commissioner and, therefore, are not entitled to revoke their election.

Refund of 1986 Overpayment

Petitioners did not file their corporate or personal joint Federal income tax returns for 1986 through 1990 until in or about July 1991.  Petitioners received extensions to file only for their 1986 and 1989 returns, which were due August 15, 1987, and August 15, 1990, respectively.  The IRS selected petitioners' 1986 through 1990 corporate and personal returns for examination in August 1991 and commenced an audit thereof in May 1992.

During the course of the audit, petitioners were informed that the corporate returns that they filed for the FCC were incorrect in that they filed Forms 1120 using subchapter C filing status when the FCC was a subchapter S corporation. Petitioners discovered that an accountant whom they hired filed an application for subchapter S status for the FCC with the IRS on May 1, 1986. Petitioners concede that they signed the application but maintain that they were not aware of its contents or its impact. As a result of this error, petitioners' personal returns were affected. Respondent proposed numerous adjustments to petitioners' returns for the years at issue, including the determination that petitioners were entitled to NOL's for 1989 and 1990.

Petitioner testified that during the audit conducted by an IRS examiner referred to only as Ms. Van Der Heyden, the 1989 and 1990 NOL's, and their carryback to 1986 and 1987, respectively, were discussed. According to petitioner, in response to his request to file amended returns for 1986 through 1990 to properly reflect the NOL's and overpayments resulting from the carrybacks thereof, Ms. Van Der Heyden explained that the policy of the IRS does not permit taxpayers to file amended returns while involved in an audit. Petitioner further testified that he was assured by Ms. Van Der Heyden that the IRS would allow him to carry back the NOL's and obtain refunds for the resulting overpayments.

Petitioner contends that he made additional verbal requests for refunds of the 1986 and 1987 overpayments during a conference with Appeals Officer Roger Caruso (Mr. Caruso) held in February 1993. Petitioner testified as follows about the conversation that he and Mr. Caruso had concerning the rental arrangement between the FCC and the nursery:

> I did mention to him, in a subtle manner as opposed to a demand-type thing, that in the event that the rental concept is disallowed, then it will result in a net operating loss on * * * my 1989 and 1990 returns, that I would like to be able to utilize. And at that point, I think I got a nod.

Petitioner claims that Mr. Caruso assured him that the NOL's would be taken into account during the final adjustment process. However, on February 16, 1994, respondent issued a notice of deficiency that failed to address the NOL's or refunds. Petitioner asserts that he contacted Appeals Officer Lynn Morrison regarding the omission and was told that the issue would be resolved by the Tax Court and his verbal requests for refunds constituted valid claims made within the period of limitations. At no time prior to the issuance of the notice of deficiency did petitioners file a protective claim for refund (Form 843), or any written request regarding the 1986 or 1987 overpayments resulting from the NOL's.[2]

---

[2]     Petitioners filed a refund suit in the U.S. District Court for the Middle District of Florida, claiming a refund or credit based solely on their 1986 return as filed. The District Court ruled that the refund or credit was barred by sec. 6511. Hodel v. United States, 74 AFTR 2d 94-6001, 94-2 USTC par. 50,427 (M.D.

                                                                    (continued...)

Respondent concedes that petitioners incurred NOL's of $11,281 in 1989 and of $7,401 in 1990, and that the NOL's may be carried back to reduce income in 1986 and 1987, respectively. Respondent also concedes that petitioners are entitled to a refund of the resulting 1987 overpayment and informed this Court that a refund check has been issued to petitioners. Respondent argues, however, that petitioners' claim for a refund of the 1986 overpayment is barred under section 6511(d)(2)(A).

Section 6511(a) provides generally that a claim for credit or refund of an overpayment of any tax as to which the taxpayer is required to file a return shall be filed within 3 years from the time the return was filed, or 2 years from the time the tax was paid, whichever expires the later. Section 6511(d)(2)(A) provides a special period of limitations for claims for credit or refund with respect to NOL carrybacks. Under this section, a taxpayer must file a refund claim within 3 years "after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss" which results in the carryback (and claim for refund).

The NOL at issue was incurred during petitioners' 1989 taxable year. Petitioners' 1989 return was due August 15, 1990, at which time the period of limitations began to run for any

---

[2](...continued)
Fla. 1994), affd. without published opinion 62 F.3d 400 (11th Cir. 1995).

refund claim they had based on the return.  Sec. 6511(d)(2)(A).
Because the overpayment arose from an NOL carryback, petitioners
had to file a refund claim on or before August 15, 1993.  Id.
Petitioners did not file a written claim for refund, nor did they
raise the issue on their 1986 or 1989 returns.  The statute
therefore bars the claim unless petitioners can prove that:  (1)
They filed an "informal claim" putting the IRS on notice of their
refund claim; (2) the IRS is equitably estopped from raising a
statute of limitations defense; or (3) the period of limitations
is equitably tolled.[3]

The validity of certain informal refund claims has long been
recognized by the Supreme Court:

> a notice fairly advising the Commissioner of the nature of
> the taxpayer's claim, which the Commissioner could reject
> because too general or because it does not comply with
> formal requirements of the statute and regulations, will
> nevertheless be treated as a claim, where formal defects and
> lack of specificity have been remedied by amendment filed
> after the lapse of the statutory period.  * * *

United States v. Kales, 314 U.S. 186, 194 (1941).  "[I]n order to
be valid, an informal claim must have a written component which
adequately notifies the * * * [IRS] that a refund is sought for a
particular year."  Alisa v. Commissioner, T.C. Memo. 1976-255;
see also Mills v. United States, 890 F.2d 1133, 1135 (11th Cir.

---

[3]     As an initial matter, the Court notes that the IRS cannot
waive the statute of limitations.  Vishnevsky v. United States,
581 F.2d 1249, 1252-1253 (7th Cir. 1978); Essex v. Vinal, 499
F.2d 226, 231 (8th Cir. 1974).  There is no contention in this
case that the IRS agreed to extend the statutory period of
limitations.

1989) (citing <u>Arch Engg. Co. v. United States</u>, 783 F.2d 190, 192 (Fed. Cir. 1986)); <u>American Radiator & Standard Sanitary Corp. v. United States</u>, 162 Ct. Cl. 106, 318 F.2d 915, 920 (1963).

Therefore, to prevail on their informal claim argument, petitioners bear the burden of proving that: (1) They filed a writing with the IRS; (2) this writing requested a refund or notified the IRS that they would seek a refund; and (3) the IRS had enough information to begin examining their claim before they filed their formal refund claim. Petitioners did not file a written claim for refund of the 1986 overpayment. It is well established that an oral claim in and of itself is not sufficient to satisfy section 6511.[4] <u>Alisa v. Commissioner</u>, <u>supra</u> (citing <u>Ritter v. United States</u>, 28 F.2d 265, 267 (3d Cir. 1928) and <u>Barenfeld v. United States</u>, 194 Ct. Cl. 903, 442 F.2d 371 (1971)).

In the alternative, petitioners argue they are entitled to a refund of the 1986 overpayment based on the assurances of the IRS agents that their claim would be considered, that their verbal requests constituted valid refund claims within the limitations period, and that taxpayers were not permitted to file amended returns during an audit. In other words, petitioners argue that

---

[4] Even if "the agent subsequently wrote a memorandum summarizing the oral statements [it would not] suffice to validate the alleged claim; the failure to file a written claim may be taken as an indication the taxpayer does not intend to prosecute his oral claim." <u>Alisa v. Commissioner</u>, T.C. Memo. 1976-255.

respondent is equitably estopped from arguing that their refund claim is time barred.

The principle of equitable estoppel prohibits a party from asserting a statute of limitations as a defense where that party's conduct has induced another to refrain from bringing suit during the applicable limitations period.  The Supreme Court addressed the issue of equitable estoppel in Heckler v. Community Health Services, 467 U.S. 51, 59 (1984):

> Estoppel is an equitable doctrine to avoid injustice in particular cases.  While a hallmark of the doctrine is its flexible application, * * *
>
> * * * * * * *
>
> the party claiming the estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse," and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.  * * * [Fn. refs. omitted.]

Therefore, to succeed on a traditional estoppel grounds defense the litigant must prove (1) a misrepresentation by another party (2) which he reasonably relied upon (3) to his detriment.  United States v. Asmar, 827 F.2d 907, 912 (3d Cir. 1987); Dade County v. Rohr Indus., Inc., 826 F.2d 983 (11th Cir. 1987).

Additional considerations arise when a party alleges estoppel against the Government, for "When the government is unable to enforce the law because the conduct of its agents has given arise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined."  Heckler v.

<u>Community Health Services</u>, <u>supra</u> at 60.  Equitable estoppel is applied against the Government with utmost caution and restraint.  <u>Estate of Carberry v. Commissioner</u>, 933 F.2d 1124, 1127 (2d Cir. 1991) (quoting <u>Boulez v. Commissioner</u>, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987)), affg. 95 T.C. 65 (1990).  Many Courts of Appeals apply more stringent requirements for assertion of estoppel against the Government.  See, e.g., <u>Penny v. Giuffrida</u>, 897 F.2d 1543, 1545 (10th Cir. 1990); <u>United States v. Asmar</u>, <u>supra</u> at 911 n.4 (equitable estoppel against Government only if affirmative misconduct).

The Court of Appeals for the Eleventh Circuit, to which an appeal of this case lies, has not yet ruled whether affirmative misconduct is an element of Government estoppel.  See <u>Lyden v. Howerton</u>, 783 F.2d 1554 (11th Cir. 1986); <u>Deltona Corp. v. Alexander</u>, 682 F.2d 888, 891 n.4 (11th Cir. 1982); <u>In re Campbell</u>, 186 Bankr. 731 (N.D. Fla. 1995).  However, instead, that court has adopted the reasoning of the former Court of Appeals for the Fifth Circuit in <u>United States v. Florida</u>, 482 F.2d 205, 209 (5th Cir. 1973):

> Whether the defense of estoppel may be asserted against the United States in actions instituted by it depends upon whether such actions arise out of transactions entered into in its proprietory capacity or contract relationships, or whether the actions arise out of the exercise of its powers of government.  The United States is not subject to an estoppel which impedes the exercise of the powers of government, and is not estopped to deny the validity of a transaction or agreement which the law does not sanction. [Citations omitted.]

See also <u>Hicks v. Harris</u>, 606 F.2d 65, 68 (5th Cir. 1979)
("Estoppel cannot be asserted against the United States in
actions arising out of the exercise of its sovereign powers").
But see <u>Simmons v. United States</u>, 308 F.2d 938, 945 (5th Cir.
1962) ("It is well-settled that the doctrine of equitable
estoppel, in proper circumstances, and with appropriate caution,
may be invoked against the United States in cases involving
internal revenue taxation.").[5]

Under <u>Golsen v. Commissioner</u>, 54 T.C. 742, 756-757 (1970),
affd. 445 F.2d 985 (10th Cir. 1971), we are obligated to follow
the law as stated by the Court of Appeals in the circuit to which
this case is appealable.  Therefore, in order for petitioners to
state a claim for equitable estoppel against the United States,
they must show:  (1) That the traditional elements of estoppel
are present; (2) that the Government was acting in its private or
proprietary capacity rather than its public or sovereign
capacity; and (3) that the Government's agent was acting within
the scope of his or her authority.  <u>United States v. Vonderau</u>,
837 F.2d 1540, 1541 (11th Cir. 1988).

The United States was acting in its sovereign capacity in
its efforts to collect taxes from petitioners.  Collection of the
public revenue is a uniquely governmental function exercised by

---

[5]    The Court of Appeals for the Eleventh Circuit, in the en
banc decision <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th
Cir. 1981), adopted as precedent decisions of the former Court of
Appeals for the Fifth Circuit rendered prior to Oct. 1, 1981.

the Federal Government in its capacity as sovereign pursuant to the Sixteenth Amendment to the U.S. Constitution.[6]  Consequently, under the law as stated by the Court of Appeals for the Eleventh Circuit, petitioners may not state a claim for equitable estoppel because they are unable to establish that the United States, acting through the IRS and its agents, was acting in a private or proprietary capacity.  Id. at 1541.

Even if the Court of Appeals for the Eleventh Circuit were to decide that affirmative misconduct, and not sovereign capacity, was the touchstone of the equitable estoppel defense, petitioners' argument must fail because they have failed to demonstrate that the IRS, acting through its agents, engaged in affirmative misconduct.  Assuming, arguendo, that we give credit to the entirety of petitioner's testimony and allegations, we are unable to find that the statements made by Ms. Van Der Heyden, Mr. Caruso, and Ms. Morrison amount to affirmative misconduct. The agents might have been mistaken, and they might have led petitioners to believe their verbal requests for refunds constituted valid informal claims within the period of limitations, but this is not affirmative misconduct.  At most, these statements indicate that the agents were negligent, perhaps

---

[6]    The Sixteenth Amendment provides:  "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."  U.S. Const. amend. XVI.

even recklessly so. But negligence, even reckless negligence, is not affirmative misconduct. Schweiker v. Hansen, 450 U.S. 785 (1981); Portmann v. United States, 674 F.2d 1155, 1167 (7th Cir. 1982) (citing TRW, Inc. v. FTC, 647 F.2d 942, 951 (9th Cir. 1981) (defining affirmative misconduct as "something more than mere negligence")).

Moreover, the often-stated general rule is that a revenue agent does not have the authority to bind the Commissioner. See Dixon v. United States, 381 U.S. 68, 73 (1965); United States v. Stewart, 311 U.S. 60 (1940). A claim of estoppel is usually rejected, even though the taxpayer contends that he followed the erroneous advice of an agent and acted in reliance upon it. Boulez v. Commissioner, supra; Montgomery v. Commissioner, 65 T.C. 511, 522 (1975). Accordingly, petitioners' equitable estoppel claim fails.

Petitioners also raise arguments that the period of limitations should be extended in light of the misrepresentations allegedly made by the IRS agents. In tax refund cases, the actions of the IRS and its agents may equitably toll a period of limitations. Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990) (rebuttable presumption of equitable tolling applies to suits against the United States); Brockamp v. United States, 67 F.3d 260, 261 (9th Cir. 1995), cert granted ___ U.S. ___, 116 S. Ct. 1875 (1996). The elements of equitable tolling are similar to those of equitable estoppel. A taxpayer seeking to apply

equitable tolling must show, at a minimum, that the IRS did something that reasonably induced him or her to believe the period of limitations was being tolled or had been extended.  See First Alabama Bank v. United States, 981 F.2d 1226, 1228 (11th Cir. 1993).  Although there may be additional requirements to prove equitable estoppel, the Court need not explore those requirements because petitioners have not shown that the IRS did or said anything which reasonably could have induced them to believe the time period for filing a claim for refund was being tolled or had been extended.

In sum, we hold that petitioners are not entitled to a refund of the 1986 overpayment attributable to the carryback of the 1989 NOL.  This result may appear inequitable in light of the fact that respondent clearly concedes that an overpayment exists for taxable year 1986.  However, the general principles of equity may not override statutory requirements for the timely filing of tax refund claims.  Republic Petroleum Corp. v. United States, 613 F.2d 518 (5th Cir. 1980).  Furthermore, the Court notes that with reference to the equities of this case, petitioners created this situation by their failure to file timely returns for the years at issue.

To reflect the concessions made by both parties and our holdings herein,

<u>Decision will be entered under Rule 155</u>.