H. L. McBRIDE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

McBRIDE REFINING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47338, 47339. Filed February 21, 1955.

*T. Gilbert Sharpe, Esq.*, for the petitioners.
*W. B. Riley, Esq.*, for the respondent.

906

OPINION.

BLACK, *Judge:* Respondent disallowed $40,689.84 of a deduction for orchard development expense claimed by the McBride Refining

Company, Inc., for 1944. The $40,689.84 consisted of (a) $17,214.84 expended to clear an 800.69-acre section of a 1,050.69-acre tract of land, and (b) $23,475 expended to clear the remaining 250-acre section of the tract and plant citrus trees on 200 acres thereof.

Respondent first contends that the 800.69-acre section was beneficially owned as community property by H. L. McBride and his then wife and, therefore, that the $17,214.84 expended in clearing it was not deductible by the company. Moreover, continues respondent, the $17,214.84 constituted a taxable dividend to McBride in 1944 to the extent of half the company's earnings or profits available for dividends at the close of that year.

It is respondent's contention that the conveyance of the 1,050.69-acre tract by McBride to the Refining Company was, to the extent of the 800.69-acre section here in question, not bona fide and served no business purpose. He maintains that from the first the parties intended that the 800.69 acres would be reconveyed to McBride after the company cleared them, thereby increasing their value to McBride as grazing land in his individual ranching operations. Clearly the issue here posed is one of fact.

The 1,050.69-acre tract was conveyed by McBride to the Refining Company on October 31, 1944, in order that the latter might develop it into orchards and sell it at a profit.[2] This had proved to be a very profitable endeavor—other land developers in that area having realized profits of $600 per acre and more on sales of orchards developed by them. Certainly the venture contemplated by the company was understandable and reasonable in view of that experience. Moreover, the understanding that if part of the tract was not developed in orchards such part would be reconveyed to McBride for the same consideration (appropriately prorated) as was paid by the company was, we think, a reasonable device protecting the company from loss on resale of the land if its contemplated development project was not completed. Reconveyance of the 800.69 acres to McBride was made on September 30, 1945, primarily because it had been discovered that the land could not be properly irrigated. The evidence clearly shows that to be true.

We think that the transaction was bona fide and served a business purpose; it "is in fact what it appears to be in form." *Chisholm* v. *Commissioner*, (C. A. 2) 79 F. 2d 14, 15. The sale of the 800.69 acres was complete, McBride retaining no control over that acreage other than as a stockholder of the Refining Company. It is true that he owned a majority of the company's stock and we have, therefore, subjected the transaction to particular scrutiny, but his majority was only a fraction of 1 per cent and the balance of the company's stock

[2] Although McBride testified that it was the company's intent to construct a recycling plant upon part of the tract, we have found, based on the sworn statement of the company's vice president, A. B. White (deceased), which statement was accepted in evidence, that the company primarily intended to develop the tract into orchards.

was held by unrelated parties. We conclude, on the basis of the entire record, that these last mentioned factors did not vitiate the transaction, see *Chisholm* v. *Commissioner, supra; Commissioner* v. *Behan,* (C. A. 2) 90 F. 2d 609, that McBride was not the beneficial owner of the 800.69 acres, and that the $17,214.84 expended by the Refining Company in clearing that acreage was not for McBride's benefit and was not to any extent a taxable dividend to him in 1944.[3]

Respondent next contends that neither the aforementioned $17,214.84 nor the balance ($23,475) of the $40,689.84 expended by the Refining Company for orchard development may be deducted by the company in 1944 since they constituted nondeductible capital expenditures within the meaning of section 24(a) (2) of the Internal Revenue Code of 1939.[4] The Refining Company does not deny that the expenditures in issue were capital in character. See *J. H. Sanford,* 2 B. T. A. 181. However, it maintains that it had the option to currently deduct those expenditures under the following sentence of Regulations 111, section 29.23(a)-11: "Amounts expended in the development of farms, orchards, and ranches prior to the time when the productive state is reached may be regarded as investments of capital." This sentence appeared in earlier regulations and was therein interpreted by I. T. 1610, II-1 C. B. 85 (1923), and I. T. 1952, III-1 C. B. 139 (1924).[5] The Refining Company is aware that Mim. 6030, 1946-2 C. B. 45 (issued June 20, 1946), revoked I. T. 1610, *supra* (declaring that the I. T. caused misinterpretation of the above regulation), and further announced that although that regulation does give a taxpayer the option to capitalize "expenditures incurred during the period of development which might otherwise be deductible as current expenses, [it] * * * *does not permit capital items to be treated as ordinary and necessary business expenses."* (Emphasis added.) But the com-

---

[3] We express no opinion as to the tax consequences of the reconveyance of the 800.69 acres to McBride on September 30, 1945, since that tax year is not before us.

[4] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of

\* \* \* \* \* \* \*

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate, except expenditures for the development of mines or deposits deductible under section 23 (cc) ;

[5] I. T. 1610.

Under article 110, Regulations 62, taxpayer has option of charging amounts expended in development of orchards prior to time productive state is reached as expense or capitalizing them.

I. T. 1952.

A taxpayer who exercised his option for the years 1918, 1919 and 1920 in accordance with article 110, Regulations 45, by capitalizing the expenditures of bringing his ranch property to a productive state instead of deducting the amounts as business expenses is not entitled to file claims for refund based on the fact that he now desires to treat the amounts as business expenses for those years.

pany argues that Mim. 6030 is incorrect in its interpretation of the regulation and, even if correct, cannot be applied retroactively to 1944.

Our Court had occasion to deal with this precise question in *Thompson & Folger Co.*, 17 T. C. 722, where, after a thorough analysis, we concluded with the following statement which is alike applicable to the instant case:

the petitioner's counsel relies on what he claims was the established and accepted interpretation of the regulation for many years, which position he feels is supported by I. T.'s 1610 and 1952, *supra*. He takes rather violent issue with the interpretation of the regulation appearing in Mim. 6030 * * * , *supra*, as being contrary to the regulation and as having no retroactive force and effect. His position, in our opinion, is not well taken and must be rejected. The interpretation of the regulation, as set forth in considerable detail in Mim. 6030 * * * is in complete harmony with our interpretation previously stated herein. As for the prior interpretation claimed, I. T. 1610 goes no further than to say that expenditures which, under the regulation, "may be regarded as investments of capital" may, at the option of the taxpayer, be deducted or capitalized, and I. T. 1952 merely states that where the taxpayer has capitalized expenditures which, under the regulation in question, "may be regarded as investments of capital," he may not thereafter change his mind and obtain a refund of the income tax paid by changing his position and claiming the expenditures as business expense deductions. As is true of the regulation itself, neither of the I. T.'s may in our opinion be read as saying that expenditures, capital in character, as are those in this case, "may be regarded as ordinary and necessary expenses." Furthermore, the proposition that I. T.'s, Mimeographs. and other office rulings do not have the stature of a regulation is too well established to require discussion. And even if the I. T.'s in question were as petitioner contends, they would, as a matter of course, have to give way to a proper interpretation and application of the law, whether in the form of the statute itself or the duly promulgated regulation. And that would be so regardless of whether the overruling of the I. T.'s was prospective or retroactive in effect.

The Refining Company next relies upon the concluding declaration of policy in Mim. 6030, *supra*, to the effect that where,

with respect to taxable years beginning prior to July 1, 1946, taxpayers have, in their returns, treated the above-mentioned [capital] * * * expenditures as ordinary and necessary expenses, such treatment will not be disturbed, and the rules stated in this mimeograph with respect to [capital] * * * expenditures will be applied only with respect to such costs incurred for taxable years beginning on or after July 1, 1946. * * * [6]

The company correctly contends, we think, that its treatment of orchard development expenditures for 1944 falls within the ambit of the above declaration of policy. It then argues that respondent, by disallowing the 1944 deduction has retroactively changed that administrative policy, which is improper, and has treated it unequally vis-à-vis other taxpayers who have been permitted to take advantage of that policy.

[6] This statement of policy was clarified in Mim. 6030 (Supplement 1), 1948–1 C. B. 42 (issued January 8, 1948), but that clarification has no particular pertinence to the facts herein and, therefore, need not be discussed.

The Refining Company's position has no legal validity. We have already seen that the correct interpretation of the regulatory provision in question, and of the underlying statute, prevents deduction of the expenditures here in issue, and that application of the correct interpretation to taxable years ending prior to its announcement in Mim. 6030 does not constitute unallowable retroactivity. *Thompson & Folger Co., supra; Manhattan General Equipment Co.* v. *Commissioner*, 297 U. S. 129. As regards the policy statement with which Mim. 6030 is concluded, it is no more than an administrative declaration by respondent's predecessor (by whom it was promulgated) to the effect that he, in his discretion, has determined not to enforce the revenue laws in the situation described. The cases are clear that such a departmental ruling has no binding or legal effect and may be changed, or ignored, either prospectively or retroactively. *Biddle* v. *Commissioner*, 302 U. S. 573; *United States* v. *Bennett*, (C. A. 5) 186 F. 2d 407; *Langstaff* v. *Lucas*, (W. D., Ky.) 9 F. 2d 691, affirmed per curiam (C. A. 6) 13 F. 2d 1022, certiorari denied 273 U. S. 721; *Hirshon* v. *United States*, (Ct. Cl.) 116 F. Supp. 185; *Southern Maryland Agricultural Fair Association*, 40 B. T. A. 549, and many others. This Court long ago said in *James Couzens*, 11 B. T. A. 1040, 1156:

as to the effect of the departmental orders, we are of opinion that they may not go so far as either to impose upon a taxpayer more than his statutory tax or to relieve him from its full burden. Congress, as we have said, has prescribed a system for closing cases by limitation, agreement, or legal proceeding, and this must be held to be all comprehensive. It does not admit the view that the Commissioner may by regulation or ruling in a particular case close it from further consideration. We have seen * * * that his ruling does not foreclose the taxpayer, and it is but reasonable to hold the door open as well to the United States.

And, more recently, in *Keystone Automobile Club*, 12 T.C. 1038, 1047, affd. (C.A. 3) 181 F. 2d 402: "No basis exists for limiting the action of respondent under the doctrine of estoppel where appropriate enforcement of the law requires a change of position on his part."

On the strength of the foregoing authorities, we hold that the Refining Company may not currently deduct the $40,689.84 incurred in orchard development expenditures in 1944, but must capitalize those expenditures as additional costs of the property. This additional cost of the property to the Refining Company is to be recovered in the ways and manner provided by the applicable statutes.

*Decisions will be entered under Rule 50.*