UNITED STATES of America, Defendant, Appellant,

v.

Francis L. HIGGINSON et al., Trustees, Plaintiffs, Appellees.

No. 5116.

United States Court of Appeals First Circuit.

Heard Oct. 2, 1956.

Decided Nov. 16, 1956.

David O. Walter, Atty., Dept. of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., Anthony Julian, United States Atty., and Arthur I. Weinberg, Asst. U. S. Atty., Boston, Mass., were on the brief, for appellant.

Harry K. Mansfield, Boston, Mass., with whom Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., was on the brief, for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment entered February 23, 1956, in the District Court of the United States for the District of Massachusetts for plaintiffs-appellees in an action to recover federal income taxes in the sum of $914,464.79 paid under protest for the years 1947, 1948, 1949 and 1950.

The question raised in this appeal is whether beneficiaries of an inter vivos trust which by its terms required the net income to be paid semiannually to them became taxable, within the meaning of Int.Rev.Code of 1939, § 162(b), as amended, 56 Stat. 809 (1942) 26 U.S. C.A., upon net income received but voluntarily withheld for approximately four years by the trustees pending resolution by the state courts of an unsuccessful claim that the trust was invalid.

The district court, upon stipulation by the parties, summarized the facts substantially as follows:

The plaintiffs are duly appointed successor trustees under a trust established by T. Jefferson Coolidge, late of Manchester, Massachusetts, by deed of trust dated February 12, 1913, (hereinafter called the Trust). The settlor directed the trustees to make semiannual distributions of the net income of the entire trust fund to designated beneficiaries. He conferred upon the trustees the discretion to retain or otherwise apply the share of any person or persons who may be "under any disability * * * whereby it shall not be lawful for the trustees to make payment directly to such person or persons, * * *." The settlor retained to himself a power to alter or amend the Trust by deed. He died in 1920, leaving a will with a residuary clause, never having exercised his power to alter or amend.

Prior to making semiannual distribution of income scheduled for February 12, 1948, the trustees in a letter were notified by attorneys representing the estates of certain residuary beneficiaries under the will of the settlor of their contention that the remainder interests and the life estates of the Trust were invalid as violative of the Rule Against Perpetuities, and their recommendation that further income payments should not be made until the questions raised should be determined.

Upon receipt of said letter, the trustees, upon advice of their counsel, decided that further payments of income of the Trust would not be made until the questions raised by the assertion of the invalidity of the Trust had been satisfactorily disposed of. The beneficiaries were advised of this decision by the trus-

tees in a letter of February 26, 1948, which stated in relevant part—

"The Fiduciary Trust Company of Boston, as administrator with the will annexed of Frederick R. Sears and his widow Norma Sears, has questioned the validity of the Trust dated February 12, 1913 made by Mr. Coolidge. In the opinion of Trustees' Counsel, the questions raised are serious. Upon their advice, we have decided we will not, for the present, make the payment of income to beneficiaries customarily made on or about February 12.

"For your information your share of Trust income held by the Trustees December 31, 1947 (assuming the Trust is valid) was:

\* \* \* \* \* \*

"Counsel advises we should file a 1947 Federal Income Tax return showing the amount of the net trust income for the calendar year 1947 with offsetting deductions for Trust income to be distributed currently to the beneficiary, (on the assumption the Trust is valid). The return shows as your share of such distributable income:

\* \* \* \* \* \*

"In view of the circumstances, it is suggested you consult your own attorneys with respect to the preparation of your Federal Income Tax return for 1947."

During the calendar years 1947 through 1950 (the taxable years), the trustees received and collected income of the Trust fund. After August 12, 1947, none of the Trust income was paid out to the beneficiaries during those years.

On June 29, 1950, suit was instituted in the Massachusetts Probate Court by one of the beneficiaries under the Trust for a decree declaring the Trust valid. On May 29, 1951, decrees in equity were issued declaring that the life interests in the Trust were valid and effective, but that the remainders of principal were invalid and void. October 21, 1951, was to be the termination date of the Trust.

Accordingly, all parties agreed to a compromise which became effective on December 4, 1951. The effect of this compromise was to make final and binding the decision of the Probate Court holding the life interests to be valid. On October 31, 1952, the Supreme Judicial Court of Massachusetts held that the remainder interests were valid.

The income of the Trust during the taxable years was retained by the trustees, acting within their discretion, to insure proper distribution and avoid the personal risk of improper distribution. In filing income tax returns for the Trust, the trustees claimed for the years 1947, 1948, and 1949, as deductions those portions of the Trust income which were distributable to the beneficiaries, though not distributed. On January 10, 1951, the Commissioner issued to the trustees a notice of deficiency for the years 1947, 1948, and 1949, determining as deficiencies those amounts which the trustees had deducted as distributable income for the respective years on the ground that the Trust income withheld because of the controversy was not distributable to the beneficiaries and so was taxable to the Trust. On February 8, 1951, the trustees paid under protest these deficiencies with interest. On March 15, 1951, the trustees paid under protest the tax upon the entire income after expenses for the calendar year 1950, showing no income as distributable, based upon the Commissioner's notice of deficiency for the years 1947 through 1949. On June 9, 1953, the trustees filed claims for refund of the taxes and interest paid, with respect to the taxable years. On August 14, 1953, the Commissioner denied each of these claims for refund.

The district court overruled the Commissioner by holding, in an opinion filed January 6, 1956, that the income withheld by the trustees during the taxable years was currently distributable to the beneficiaries, and was an allowable deduction to the trustees within the purview of Int.Rev.Code of 1939, § 162(b), as amended, 56 Stat. 809 (1942). The opinion concluded with the words "and

accordingly, judgment must be entered for the plaintiffs." Thereupon the clerk made a docket entry as follows: "Jan. 6, Sweeney, Ch.J. Opinion: 'Judgment must be entered for the plaintiffs.' Opinion filed. Copies furnished to counsel, Jan. 6, 1956." On February 23, 1956, the district judge signed a formal "Judgment", as submitted by the plaintiffs, for the recovery from the defendant of "the sum of $914,464.79, with interest according to law." The "Judgment" stated that the court had filed "an opinion" on January 6, 1956. Thereupon an entry was made in the clerk's docket as follows: "Feb. 23 Sweeney, Ch.J. Judgment after hearing on agreed statement of facts and argument of counsel, and in accordance with the opinion of the court handed down on January 6, 1956, for the recovery by the plaintiff from the defendant of the sum of $914,464.79, with interest according to law. Judgment filed. Counsel notified Feb. 23, 1956." The Government filed notice of appeal on April 20, 1956.

On oral argument before us on October 2, 1956, the question of timeliness of appeal was raised for the first time by the Government. By leave of court, the trustees, on October 15, 1956, filed a motion to dismiss the appeal on that ground.

The trustees, in their motion to dismiss, contend that the appeal, taken on April 20, 1956, by the Government, is untimely. The determination of this question turns on which entry, that of January 6, 1956, or that of February 23, 1956, indicates the final judgment of the district court. Deciding that the February 23, 1956, entry indicates the final judgment, we hold that the appeal was within the 60 days provided by Fed.R. Civ.P. 73(a), 28 U.S.C.A.

The problem of what constitutes a "final judgment" has been treated by most of the circuit courts, but without a great degree of uniformity. Moreover, the Federal Rules do not spell out the meaning of a "final judgment". By defining a "judgment" in Fed.R.Civ.P. 54

(a) as a "decree" or "any order from which an appeal lies", and by providing in Rule 58 "when the court directs that a party recover only money or costs or that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him of the direction", the Federal Rules do not answer the question which confronts us. The terms "decree", "order" and "direction" have to be judicially defined if the rules are to be meaningful.

We said in In re Forstner Chain Corporation, 1 Cir., 1949, 177 F.2d 572, 576:

"* * * A final judgment is the concluding judicial act or pronouncement of the court disposing of the matter before it. But neither by statute nor by rule is there a requirement that judgment be pronounced in any particular way, or embodied in written form in a separate formal document entitled 'Judgment'. * * * Whether such a judgment has been rendered depends primarily upon the intention of the court, as gathered from the record as a whole, illumined perhaps by local rule or practice. * * *"

Since, in the Forstner case, the district judge had refused to grant a formal judgment, it was clear under the local practice that he did not have in contemplation any subsequent judicial act of pronouncing judgment in a more formal manner. But in the instant case, it can be gathered from the language of the formal judgment of February 23, 1956, and from the fact of its rendition and entry that neither the district judge nor the clerk regarded the reference in the opinion nor the first entry as a judgment or entry of judgment. In the judgment of February 23, which the district judge signed, reference is made to the court having on January 6, rendered and filed not a judgment, but "an opinion".

In United States v. Hark, 1944, 320 U.S. 531, 534, 535, 64 S.Ct. 359, 360, 88 L.Ed. 290, rehearing denied, 1944, 321 U.S. 802, 64 S.Ct. 517, 88 L.Ed. 1089, where the same district judge, who decided the

instant case, concluded his opinion by stating, " 'the motion to quash is granted' ", and later signed a formal order quashing the indictment, the Supreme Court in deciding that the time for appeal ran from the signing of the formal order and not from the entry resulting from the last sentence in the opinion, said:

> " * * * Where, as here, a formal judgment is signed by the judge, this is *prima facie* the decision or judgment rather than a statement in an opinion or a docket entry. * * * The judge was conscious, as we are, that he was without power to extend the time for appeal. He entered a formal order of record. We are unwilling to assume that he deemed this an empty form or that he acted from a purpose indirectly to extend the appeal time, which he could not do overtly. In the absence of anything of record to lead to a contrary conclusion, we take the formal order of March 31 as in fact and in law the pronouncement of the court's judgment and as fixing the date from which the time for appeal ran."

By the same reasoning, the formal judgment of February 23, 1956, is in fact and in law the pronouncement of the court's judgment in the case before us, even though Hark is a criminal case and this is a civil one.

The trustees, in asserting the entry of January 6, 1956, represented the final judgment, rely heavily on a recent decision of the Second Circuit, F. & M. Schaefer Brewing Co. v. United States, 236 F.2d 889, 892. We think that a major reason for that holding was a local rule, Southern and Eastern Districts of New York Rule 10(a), which stated that a " 'memorandum of the determination of a motion, signed by the judge, shall constitute the order.' " No such rule of the court in which the instant case originated has been brought to our attention. To the extent that the language of the Schaefer opinion might apply even where no such local rule exists, this decision is not in accord with it.

Since we have decided that the district judge, on the facts, could not have intended the last sentence of his opinion of January 6, 1956, to be the concluding judicial act or pronouncement of the court, and, further, that by local practice the language used by the district judge in his opinion was not regarded as a judgment, we do not reach the question whether the docket entry of January 6, 1956, showed the "substance" of the judgment as provided by Fed.R.Civ.P. 79 (a). It has been held, however, that the entry of January 6, 1956, would be insufficient to constitute an entry of judgment since it did not show the amounts to which the taxpayers were entitled and therefore did not comply with Rule 79 (a). United States v. Cooke, 9 Cir., 1954, 215 F.2d 528. At the minimum, failure to include in the docket entry of January 6, 1956, the amounts to be recovered by plaintiffs is further indication that this notation in the docket was not to be an entry of final judgment.

■■  Arriving at the merits, the applicable statutes for the determination of incidence of tax in this case are Int. Rev.Code of 1939, §§ 161, 162, 53 Stat. 66. § 161 provides broadly for taxation of trust income initially to the fiduciary, stating that the tax shall apply to trust income, including (1) income accumulated in trust for unborn or unascertained persons or persons with contingent interests and income accumulated for future distribution under the terms of the will or trust, (2) income which is to be distributed currently to the beneficiaries and income collected by a guardian of an infant for distribution under court order, (3) estate income during the period of administration, and (4) income which may be accumulated or distributed in the fiduciary's discretion.

§ 162, which contains provisions for allocating the income, for tax purposes, either to the fiduciary or to the beneficiaries, in pertinent part declares:

"§ 162. Net income

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\*   \*   \*   \*   \*   \*

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, 'income which is to be distributed currently' includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. \* \* \*

"(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary".

It is well established that income is currently distributable where the terms of the trust deed direct the trustees to periodically pay or credit the income to the beneficiaries. Commissioner of Internal Revenue v. Stearns, 2 Cir., 1933, 65 F.2d 371, certiorari denied Stearns v. Burnet, 1933, 290 U.S. 670, 54 S.Ct. 90, 78 L.Ed. 579; Plimpton v. Commissioner of Internal Revenue, 1 Cir., 1943, 135 F. 2d 482; Commissioner of Internal Revenue v. First Trust & Deposit Co., 2 Cir., 1941, 118 F.2d 449; McCrory v. Commissioner of Internal Revenue, 5 Cir., 1934, 69 F.2d 688. It is not disputed that the terms of the Trust deed in the case at bar directed the trustees to pay the income semiannually to the designated beneficiaries. Furthermore, the provision for payment was mandatory, and did not allow the trustees the exercise of discretion in making such payments of net income, with one exception not pertinent here.

However, the Government urges that once the trustees withheld distribution of the Trust income by reason of a dispute as to the validity of the Trust, the undistributed income was no longer currently distributable during the taxable years within the meaning of §§ 161(a) (2) and 162(b). The district court correctly pointed out that "the trustees' decision not to distribute does not, in and of itself, rob the income of its character as currently distributable." [137 F.Supp. 243.] The currently distributable nature of the trust income is determined by the terms of the Trust deed and the applicability of the relevant income tax provisions thereto.

Despite the voluntary withholding of the Trust income by the trustees, the beneficiaries due to the clear mandate of the Trust deed continued to have a right of property in the income. Accordingly, they also possessed a right to receive the Trust income. The Probate Court in decreeing in 1951 that the Trust was valid enforced this pre-existing right. Had the beneficiaries petitioned the Probate Court to declare the Trust valid and to require the trustees to distribute the income at the time (1948) the claim of invalidity was asserted by letter, the distribution undoubtedly would have been ordered. As the Court said in McCrory v. Commissioner of Internal Revenue, supra, 69 F.2d at page 690 "\* \* \* The test here is not what this trustee

thought or did, but what his trust empowered or required him to do. What instruction would a court of equity, if appealed to * * *, have given him?"

Moreover, the courts have established the rule that the question whether trust income is distributable to the life beneficiary in any particular year depends upon the local law which has jurisdiction over the trust. Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 1934, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Saltonstall v. Commissioner of Internal Revenue, 1 Cir., 1945, 148 F.2d 396. Although this principle usually is applied where the terms of the trust providing for income distribution are unclear, in this case it does sustain the trustees' argument that the present legal rights of the beneficiaries to receive the trust income at all times during the taxable years had been conclusively adjudicated by the Massachusetts courts. As a result the obligation of the beneficiaries to pay the tax upon income determined to be currently distributable to them followed as a matter of course under the language of § 162(b).

Under both the deed of Trust and local law the beneficiaries had a right of property in the income arising during the taxable years. Such income is regarded for tax purposes as income which the beneficiaries own. The trustee then becomes in effect a mere conduit or agent on their behalf for the collection of income which is theirs. This principle was stated thus by the Supreme Court in Freuler v. Helvering, supra, 291 U.S. at pages 41, 42, 54 S.Ct. at page 310:

"* * * But as the tax on the entire net income of the trust is to be paid by the fiduciary or the beneficiaries or partly by each, the beneficiary's share of the income is considered his property from the moment of its receipt by the estate. * * * For the purpose of imposing the tax the act regards ownership, the right of property in the beneficiary, as equivalent to physical possession. The test of taxability to the beneficiary is not receipt of income, but the present right to receive it. * * * "

Failure of the trustees to recognize the designated beneficiaries' present rights to receive the income neither altered these rights of property nor affected the incidence of tax as to the beneficiaries. See Saltonstall v. Commissioner of Internal Revenue, supra; DeBrabant v. Commissioner of Internal Revenue, 2 Cir., 1937, 90 F.2d 433.

The Government's contention that the trustees' withholding of trust income took it from the purview of § 162(b) as being currently distributable and placed it within § 162(c) as being income which in the discretion of the trustees may be "either distributed to the beneficiary or accumulated" is untenable in light of the Trust provisions which gave no discretion to the trustees in expressly making the income distributable semiannually to designated beneficiaries. A decision by trustees to withhold income, even though in good faith, cannot amend the plain terms of the Trust deed. The cases cited by the Government in urging this argument lend it no support since they all deal with situations where the terms of the trust did not give the beneficiaries an unqualified right to receive income. For example, in both Channing v. Hassett, 1 Cir., 1952, 200 F.2d 514 and Plimpton v. Commissioner of Internal Revenue, supra, this court held the trustee liable for tax payments only after finding that the trust did not grant the beneficiary such an unqualified right. In Plimpton v. Commissioner of Internal Revenue, supra, 135 F.2d at page 486, this court said: "* * * [I]ncome of a trust which is to be distributed currently by the fiduciary to the beneficiary must be construed to mean income which by direction of the trust instrument must be paid or credited periodically to the beneficiaries."

The Government mainly relies on the following cases as establishing that a fiduciary is taxable upon withheld income and not the eventual rightful owner: Hart v. Commissioner of Internal Reve-

nue, 1 Cir., 1932, 54 F.2d 848; Commissioner of Internal Revenue v. Owens, 10 Cir., 1935, 78 F.2d 768; Ferguson v. Forstmann, 3 Cir., 1928, 25 F.2d 47. These cases are readily distinguishable from the instant case, since none of them involved a trust in the technical sense. Moreover, they had to do with stakeholders appointed by courts, and the income in controversy was not distributable income because of court orders requiring the withholding and accumulation of that income. The court order in the above cases constituted the only terms of the "trust" and that order expressly directed accumulation.

The case most closely in point to the situation before us is DeBrabant v. Commissioner of Internal Revenue, supra. There a corporate trustee of an inter vivos trust had received in 1930 cash dividends upon stock of a mining company. Since a portion of the dividends had been paid out of a depletion reserve, the trustee refused to pay over such portion to the current income beneficiary, believing in good faith that portion to be principal. In 1933, a New Jersey court, upon the suit of the income beneficiary, decided that the entire dividend was distributable as income. The Commissioner therefore asserted an income tax deficiency against the income beneficiary for the year 1930. This tax was upheld by the Board of Tax Appeals, and the decision was affirmed on appeal. The trust instrument plainly provided for current distribution of the net trust income. The court stated that it was therefore equally clear that, under the provisions of the 1928 Revenue Act, the income was being held " 'to be distributed currently by the fiduciary' " within the meaning of § 162 and not accumulated for "unascertained persons" within the meaning of § 161, since the latter provision refers to persons "whose identifica-

tion depends on future contingencies rather than on a correct understanding of the application of the law to existing facts." [90 F.2d 435.] The court rejected the taxpayer's contention that the "unascertained persons" provision had reference to situations where the trustee cannot, without litigation, ascertain to whom the income should be paid.

Another contention presented by the Government is that an administrative ruling, I.T. 1733, II–2 Cum.Bull. 169 (1923), requires that on the facts before us trust income be made taxable to the trustee. This ruling generally provides that when income of a trust whose terms required its periodical distribution is withheld by a trustee pending the termination of litigation as to its ownership, the income is taxable to the trustee.

■■ Admittedly, treasury regulations and interpretations long continued without substantial change are entitled to great weight. Helvering v. Winmill, 1938, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52. But, since I.T. 1733 is a ruling, it does not rise to the stature of a regulation and does not have the force thereof. H. L. McBride, 1955, 23 T.C. 901; The Nivison-Weiskopf Co., 1952, 18 T.C. 1025. Moreover, it has been established that administrative interpretations will not be given the force and effect of law by the court where the administrative interpretation has not been uniform. See Estate of Sanford v. Commissioner, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20. The DeBrabant case and other similar cases discussed above show that the Commissioner has frequently disregarded the rationale expressed in I.T. 1733. Surely this court should not be asked to give greater weight to an administrative pronouncement than the Commissioner himself has.

The judgment of the district court is affirmed.