RAYMOND DODDS, JR. and EVELYN L. DODDS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dodds v. Commissioner
Docket No. 6599-84.
United States Tax Court
T.C. Memo 1986-174; 1986 Tax Ct. Memo LEXIS 437; 51 T.C.M. (CCH) 950; T.C.M. (RIA) 86174; April 28, 1986. Raymond Dodds, Jr., pro se. Gioele Settembrini, Jr., for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: *438 * Respondent determined a deficiency in petitioners' Federal income tax for the taxable year ended December 31, 1980, in the amount of $5,502. The sole issue is whether petitioners may claim as a farming expense for the year of purchase that part of a citrus grove's price attributable to fruit on the tree where the fruit is sold the following year. FINDINGS OF FACT This case was submitted fully stipulated under Rule 122, [1] and the facts so stipulated are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. Petitioners filed a joint Federal income tax return for the 1980 tax year. They are calendar year taxpayers who resided in Arcadia, Fla., at the time they filed their petition in this case. From the late 1940's through 1978, petitioners were corn and hog farmers in Norman, Ind. In 1975 they purchased a 20-acre grove of Hamlin orange trees in *439 Arcadia (the Hamlin Grove). Petitioners still own the Hamlin Grove, and have always been full-time farmers. In 1979 petitioners moved to Arcadia and on October 3, 1980, purchased, under an oral agreement, a 20-acre grove of Valencia orange trees (the Valencia Grove). Petitioners bought the Valencia Grove with a $70,000 downpayment on October 3, 1980, [2] and a purchase money mortgage for $30,000 payable to the seller in annual $10,000 increments beginning in 1981. Petitioners paid this mortgage off on May 13, 1981. Petitioners have always operated their citrus groves as a sole proprietorship. Throughout their farming careers petitioners have used the cash receipts and disbursements method of accounting. The Valencia Grove was "set" or planted in approximately 1961. Its oranges have a growing season of between 13 and 14 months. They blossom in March of one year and are harvested during the months of April and May of the following year. Each tree has two separate crops of oranges which bloom in successive years *440 and which are harvested in successive years. The Valencia Grove was bought with an existing crop of oranges, valued at $21,600, which was harvested and sold on April 13, 14, and 15, 1981. In summary, on October 3, 1980, petitioners purchased a grove of mature trees, bearing an orange crop approximately seven months (or about 50 percent) mature. During the period from October through November 1980 petitioners hoed, mowed, pruned, sprayed the groves for rust mites, fertilized, sprayed herbicide, and maintained the irrigation system by opening the sprinkler system jets. In December 1980 petitioners cleaned the sprinkler system jets and pruned the grove. In January 1981, petitioners again serviced the irrigation system jets and pruned. From February 1981 until April 13, 1981, petitioners sprayed the trees with nutritional substances and herbicide, fertilized, serviced the irrigation system, pruned and mowed. Also, at indefinite times between October 1980 and February 1981, petitioners "banked" soil around the trunks of young trees and wrapped them with cloth to protect them from freezing. After February 1981 petitioners unbanked the dirt surrounding the small trees. On September 22, 1980 petitioner *441 Raymond Dodds signed a contract with Tropicana Products, Inc. entitled "Fruit Participation Agreement." This three-year contract obligated petitioner to sell all of the production of a certain orange grove to Tropicana, Inc. On October 6, 1980, petitioner and the President of Tropicana Products, Inc., K. A. Barnebey, executed a rider to the three-year contract which brought the Valencia Grove under its terms. Petitioner warranted good title to both the groves and the fruit there produced, and also warranted that the fruit would be free of all liens and claims. On their 1980 Federal income tax return, petitioners deducted the cost allocated to the growing crop, $21,600, as a payment for plants purchased. In his notice of deficiency, respondent disallowed the deduction. OPINION Respondent argues that section 1.61-4, Income Tax Regs., [3] compels petitioners to deduct that portion of the cost of the Valencia Grove attributable to the growing orange crop in 1981, when the crop was sold. Petitioners contend that section 1.61-4, Income Tax Regs., applies only to farmers who raise livestock, not to those who produce crops. They argue that their income should be determined with reference *442 to section 1.162-12(a), allowing a current deduction to farmers not on the crop method for the cost of "seeds and young plants," when certain requirements are met. Respondent views section 1.162-12(a), Income Tax Regs., upon which petitioners rely, as inapplicable to petitioners because they neither bought "seeds" or "young plants," nor purchased the orange crop for "further development and cultivation," nor consistently followed a practice of deducting these kinds of costs from year to year, all as required by the regulation. *443 Alternatively, respondent argues that the cost of growing crops, if deductible at all, is deductible only in proportion to the amount of the grove's purchase price actually paid before the end of the tax year for which the deduction is claimed. Respondent would exclude the $30,000 mortgage from this amount. Petitioners counter that the lien was on the land, not the crops, and in any event we should not hear an argument first raised on brief. The general rule for cash basis farmers is that they must include in gross income the profits from the sale of purchased items. This profit is to be determined by deducting the cost of the purchased items from the sales price in the year in which the sale occurs. Sec. 1.61-4(a), Income Tax Regs.; Sykes v. Commissioner,57 T.C. 618, 626-627 (1972); Alexander v. Commissioner,22 T.C. 234 (1954). [4] Petitioners' contention that this rule applies only to livestock is without merit. Section 1.61-4(d) defines farms to include fruit farms and farmers to include fruit farmers. Moreover, the subparagraph which controls here, section 1.61-4(a)(2), Income Tax Regs., includes profits from the sale of livestock *444 orotheritems which were purchased and section 1.61-4(a)(1), Income Tax Regs., specifically refers to livestock andproduce. See also Sykes v. Commissioner,supra (regulation applicable to bee larvae, ruled not livestock for section 1231 purposes); Stokes v. Commissioner,22 T.C. 415 (1954) (predecessor to section 1.61-4, Income Tax Regs., applicable to sale of plants and shrubs).
Section 1.162-12(a), Income Tax Regs., promulgated in 1958 and amended in 1961 and 1972, contains an exception to this general rule. Farmers must meet four requirements to take advantage of the current expensing exception. [5]
1. They must not be on the crop method; 2. They may currently deduct only seeds and young plants; 3. The seeds and young plants must have been bought for further development and cultivation for sale in later years; 4. The farmer must follow a consistent practice of deducting such costs as an expense from year to year. We hold that oranges on the tree are not seeds or young plants within the meaning of the regulation. Further petitioners *445 have not met the year-to-year expensing requirement. We therefore uphold respondent's determination. *446 The parties have directed us to no authority, and independently we have found none, which interprets the phrase, "seeds and young plants," as used in the regulation. Petitioners do not specify whether they contend the orange crop is seed, young plant, or both. They ask us to interpret the phrase to mean "any crop that needs further developing and cultivating." While we agree that the growing oranges required and received further development and cultivation, we do not agree that oranges are either seeds or young plants. They are the fruit of a plant (the orange tree) and they contain seeds. [6] Absent contrary indications, the words of the regulation shall be given their common meaning. See Perrin v. United States,444 U.S. 37, 42 (1979). Moreover, the regulation requires that the plants be young. Even if the oranges were plants when bought, they were not young plants. We do not decide the dividing line between young and old plants, but conclude that oranges entering the second half of their growing lives are not young. The regulation also requires that seeds and young *447 plants be consistently treated from year to year. This indicates that the items to be currently deducted are in the nature of recurring expenses. We are persuaded that section 1.162-12(a), Income Tax Regs., was intended to apply to a situation in which seeds and young plants are consumed, necessitating replacement purchases. The expense incurred for the growing crop here is not in the nature of a recurring expense. Petitioners bought a twenty year old grove with one payment, a portion of which was allocable to growing crops. Petitioners did not buy "seeds and young plants," within the meaning of section 1.162-12(a), Income Tax Regs. They may not avail themselves of that regulation. The tax treatment of their crop is governed by section 1.61-4(a), Income Tax Regs. They may deduct the cost of the crop only in the year it is sold. [7]
In light of our holding, we need not address respondent's alternative theory. To reflect the foregoing, and to take account of other adjustments conceded by petitioners, Decision will be *448 entered under Rule 155.
Footnotes
*. By order of the Chief Judge, this case was reassigned to Judge Parr↩ for opinion and decision
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Although the parties stipulated as to this fact, there is evidence in the record that a previous $2,000 deposit was made. The discrepancy is immaterial here.↩
3. Sec. 1.61-4, Income Tax Regs., reads, in pertinent part, as follows: Gross income of farmers. (a) Farmers using the cash method of accounting. A farmer using the cash receipts and disbursements method of accounting shall include in his gross income for the taxable year-- (1) The amount of cash and the value of merchandise or other property received during the taxable year from the sale of livestock and produce which he raised, (2) The profits from the sale of any livestock or other items which were purchased, * * * The profit from the sale of livestock or other items which were purchased is to be ascertained by deducting the cost from the sales price in the year in which the sale occurs, * * * However, see section 162 and the regulations thereunder with respect to the computation of taxable income on other than the crop method where the cost of seeds or young plants purchased for further development and cultivation prior to sale is involved. * * * (c) Special rules for certain receipts.↩ * * * [W]here a farmer is engaged in producing crops which take more than a year from the time of planting to the time of gathering and disposing, the income therefrom may, with the consent of the Commissioner (see section 446 and the regulations thereunder), be computed upon the crop method. In any case in which the crop method is used, the entire cost of producing the crop must be taken as a deduction for the year in which the gross income from the crop is realized, and not earlier.
4. See also Huber v. Commissioner,T.C. Memo. 1984-593↩.
5. Sec. 1.162-12(a), Income Tax Regs., reads, in pertinent part: For taxable years beginning after July 12, 1972, where a farmer is engaged in producing crops and the process of gathering and disposal of such crops is not completed within the taxable year in which such crops were planted, expenses deducted may, with the consent of the Commissioner (see section 446 and the regulations thereunder), be determined upon the crop method, and such deductions must be taken in the taxable year in which the gross income from the crop has been realized. * * * If a farmer does not compute income upon the crop method, the cost of seeds and young plants which are purchased for further development and cultivation prior to sale in later years may be deducted as an expense for the year of purchase, provided the farmer follows a consistent practice of deducting such costs as an expense from year to year. * * * For provisions relating to citrus and almond groves, see section 278 and the regulations thereunder. Sec. 278 requires that otherwise deductible expenses related to the development of newly planted citrus trees must be capitalized. Since the trees herein were approximately 20 years old when petitioners purchased the grove, sec. 278 is not relevant.↩
6. See Webster's New International Dictionary Unabridged, 1712 (2d ed. 1957).↩
7. We address here the treatment of growing crops sold after harvest. Sec. 1231(b)(4) addresses the treatment of growing crops sold before harvest.↩